11c4896UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES of AMERICA, ex rel. ARTIS HARRIS, ) ) ) | |
| Petitioner, ) ) | |
| v. ) ) | No. 11 C 4896 |
| JOSEPH YURKOVICH, Warden, Hill Correctional Center, ) ) ) ) | Judge Rebecca R. Pallmeyer |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

Convicted of murder pursuant to a guilty plea, Petitioner Artis Harris ("Harris" or "Petitioner") has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Harris contends that he was denied the benefit of his plea bargain when the court imposed a three-year term of mandatory supervised release to be served following his twenty-year term of imprisonment. Respondent Joseph Yurkovich[1] has answered arguing that Petitioner's claim is both untimely and meritless. For the following reasons, the petition is denied.

## PROCEDURAL HISTORY

On December 6, 2004, Harris pleaded guilty to first-degree murder in exchange for a sentence of twenty years in prison. (Pet. for Writ of Habeas Corpus (hereinafter "Habeas Pet.") [1], at 2.) At the hearing, the trial court informed Harris that he was charged with first degree murder and that "[m]urder carries a sentence from twenty to sixty years in the Illinois Department of Corrections and up to $25,000 in fines" as well as "a three-year mandatory supervised release

---

[1] Joseph Yurkovich is the warden of Hill Correctional Center, where Petitioner currently resides. Warden Yurkovich is substituted here as the proper respondent. *See* FED. R. CIV. P. 25(d)(1); Habeas Rule 2(a); *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004); *Bridges v. Chambers*, 425 F.3d 1048, 1049-50 (7th Cir. 2005).

period" upon release from the penitentiary.[2] (Trial Tr., Ex. K to Resp't's Answer [11], at C63.) The court then asked Harris, "[d]o you understand the charge and the possible penalties?" (*Id.*) Harris responded that he did, and then entered his guilty plea. (*Id.*) After accepting Harris's plea, the court stated, "I'll sentence you as agreed to twenty years in the Illinois Department of Corrections, which will be one hundred percent time."[3] (*Id.* at C65.) Harris's Order of Commitment and Sentence calls for a twenty-year sentence in the Illinois Department of Corrections and does not mention the three-year mandatory supervised release ("MSR"). (See Order of Commitment, Ex. K to Resp't's Answer, at C42.)

In July or August of 2006, Harris was contacted by family members who told him that the Illinois Department of Corrections website showed that his sentence included a three-year MSR term. (Harris Aff. ¶ 4, App. G to Habeas Pet.) On September 15, 2006, Harris filed a *pro se* petition for post-conviction relief pursuant to the Post-Conviction Hearing Act, 725 ILCS 5/122.1 et seq. (Pet. for Post-Conviction Relief (hereinafter "Post-Conviction Pet."), Ex. K to Resp't's Answer, at C48-53.) In his postconviction petition, Harris argued that "the Court failed to inform petitioner that his sentence would be followed by a 3-year period of [MSR]," and that his twenty-year prison sentence along with the three-year MSR "would amount to a plea of 23 years, [w]hich was not the plea agreement between the petitioner, the State or the Court." (*Id.* at C51.)

Harris cited *Santobello v. New York*, 404 U.S. 257 (1971), and *People v. Whitfield*, 217 Ill. 2d 177, 840 N.E. 2d 658 (2005), to support his claim that the court's failure to admonish him of the three-year MSR was a violation of his due process rights. (Post-Conviction Pet. at C51.) In

---

[2] Illinois law requires that defendants convicted of first degree murder serve a three-year mandatory supervised release period upon release from prison. *See* 730 ILCS 5/5 8 1(d)(1).

[3] The record does not provide any information specific to the petitioner's pretrial plea negotiations; this section of the trial transcript indicates that there was a plea agreement in place, and an affidavit signed by the petitioner provides that he "pled guilty to first degree murder in exchange for a term of 20 years in the Illinois Department of Corrections." (Harris Aff. ¶ 1, Ex. G to Habeas Pet.)

2

*Santobello*, the petitioner agreed to plead guilty in exchange for the prosecutor's promise to make no sentencing recommendation, but at sentencing, a new prosecutor recommended the maximum sentence. 404 U.S. at 258-59. The Court held that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." 404 U.S. at 262. In *Whitfield*, the petitioner pleaded guilty to first degree murder and armed robbery in exchange for a 25-year prison sentence; the petitioner was not advised during the plea hearing that he would have to serve a three-year MSR period in addition to his negotiated sentence. 217 Ill. 2d at 179-180, 840 N.E. 2d at 661. The *Whitfield* court held that when a defendant negotiates a specific sentence in exchange for his guilty plea and the trial court does not inform the defendant prior to accepting his plea that the MSR will be added to that sentence, the addition of the MSR term violates due process and "constitutes an unfair breach of the plea agreement." 840 N.E. 2d at 669.

Petitioner Harris's citations to these cases did not move the Illinois courts. The circuit court dismissed Harris's petition, holding that the trial court did admonish him of the MSR obligation when it informed him that "murder carries . . . a three-year mandatory supervised release period." (Post-Conviction Order, *People v. Harris*, No. 02-CR-19505 (Ill. Cir. Ct.), Ex. K to Resp't's Answer, at C55-58.) Harris appealed the dismissal to the Illinois Appellate Court (Notice of Appeal, Ex. K to Resp't's Answer, at C74), arguing that "his due process rights were violated when the trial court did not inform him that a three-year term of MSR was part of his agreed upon sentence." (Habeas Pet. at 3). Affirming the denial of his petition, the Appellate Court held that the record contradicted Harris's claim because he was informed that the MSR term attached to his sentence before he pleaded guilty. (Post-Conviction Appeal Order, *People v. Harris*, No. 1-07-0021 (Ill. App. Ct. 1st Dist. May 27, 2008), Ex. A to Habeas Pet., at 5.) The court distinguished *Whitfield* from Harris's case, by pointing out that in *Whitfield*, the trial court made no mention of the MSR term at all before the defendant entered a negotiated plea. (*Id.*)

3

Harris unsuccessfully sought leave to appeal to the Illinois Supreme Court. (Order Denying Pet. for Leave to Appeal, *People v. Harris*, No. 106629 (Ill. Mar. 24, 2010), Ex. B to Habeas Pet., at 1.) The Illinois Supreme Court denied leave to appeal, but it also issued a supervisory order directing the Illinois Appellate Court to vacate its decision in *People v. Harris*, No. 1-07-0021, and to reconsider Harris's claims in light of the Illinois Supreme Court's decision in *People v. Morris*, 925 N.E. 2d 1069, 236 Ill. 2d 345 (2010). (Supervisory Order, *People v. Harris*, No. 106629 (Ill. Mar. 24, 2010), Ex. B to Habeas Pet., at 2.) In *Morris*, the Illinois Supreme Court held that *Whitfield* created a new rule that "a faulty MSR admonishment deprive[s] a defendant of his right to due process by denying him the benefit of his bargain with the State." *Morris*, 925 N.E. at 1079. The *Morris* court determined, however, that this rule should not be applied retroactively to cases where the conviction was finalized before December 20, 2005, the date *Whitfield* was announced. *Id.* at 1081.

On remand to the Illinois Appellate Court, Harris acknowledged that his conviction became final before the date of *Whitfield*'s prospective applicability. (Habeas Pet. at 10.) Harris nevertheless argued that the U.S. Supreme Court's decision in *Santobello* required that he receive the benefit of his plea bargain, and that his petition for post-conviction relief supported a due process claim under that case. (Habeas Pet. at 3.) The Illinois Appellate Court stood by its earlier determination and again affirmed the dismissal of Harris's petition. (See Rule 23 Order, *People v. Harris*, No. 1-07-0021 (Ill. App. Ct. 1st Dist. Aug. 10, 2010), Ex. C to Habeas Pet.) The court noted that Harris's conviction was final and his post-conviction petition was filed before the *Whitfield* decision was issued in December 2005. Harris is therefore not entitled to retroactive relief under *Whitfield*.[4] (*Id.* at 2). The court also held that it would not "ignore *Whitfield* and *Morris* and

---

[4] According to Harris's Petition, he was convicted on December 6, 2004. (Habeas Pet. at 1.) However, the Respondent's Answer and the trial court transcript indicate that Harris was convicted on December 2, 2004. (Resp't's Answer at 1); (Trial Tr. at C60.) His sentence became
(continued...)

4

determine whether [Harris's] petition asserts the gist of a constitutional claim based solely on *Santobello*." (*Id.* at 4 (internal citations omitted).) Both *Whitfield* and *Morris* flow from the decision in *Santobello*, thus "defendant's reliance on *Santobello* does not avoid the effect of *Whitfield*, and, in turn, its prospective application under *Morris*." (*Id.*)

Finally, Harris exhausted his state court remedies when his petition for leave to appeal to the Illinois Supreme Court was denied on November 24, 2010. (Nov. 24, 2010 Letter from Clerk of Sup. Ct. of Ill., Ex. D to Habeas Pet.) Harris also filed a petition for a writ of certiorari in the United States Supreme Court on February 18, 2011, which was denied on May 2, 2011. (See Mar. 3, 2011 Letter from Office of Clerk of U.S. Sup. Ct., Ex. E to Habeas Pet.; May 2, 2011 Letter from Office of Clerk of U.S. Sup. Ct., Ex. F to Habeas Pet.)

## **DISCUSSION**

Under § 2254 of the Anti-Terrorism and Effective Death Penalty Act, a federal court will not grant habeas relief "with respect to any claim that was adjudicated on the merits in State court proceedings," unless the state decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d); *Morgan v. Hardy*, 662 F.3d 790, 797 (7th Cir. 2011). A decision unreasonably applies Federal law if it "unreasonably extend[s] a rule to a context where it should not [apply] or unreasonably refuse[s] to extend a rule to a context where it should [apply]," *id.* at 797, or if the state court "identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Coleman v. Hardy*, 690 F.3d 811, 814 (7th Cir. 2012) (internal quotations omitted) (alteration in original). Federal review of a state court's

---

[4](...continued)
final 30 days later, upon the expiration of time for direct review. *See United States ex rel. Harper v. Montgomery*, 690 F. Supp. 2d 708, 710 (N.D. Ill. 2010) (The defendant did not move to withdraw his plea and did not file a direct appeal, so his conviction became final 30 days after he pled guilty.) Regardless of which date is correct, Harris's conviction became final prior to the date of *Whitfield*. Harris filed his post-conviction petition on September 15, 2006. (Post-Conviction Pet. at C49.)

5

decision is highly deferential, and a decision may stand as long as it is objectively reasonable. *Morgan*, 662 F.3d at 797.

Harris argues that he agreed to plead guilty in exchange for a twenty-year prison sentence, and adding a three-year MSR period to that sentence violated his due process rights because he did not receive the sentence to which he agreed. (Habeas Pet. at 23; Pet'r's Reply [14], at 1.) In order to obtain habeas relief, Harris must now show that the state court decision rejecting that argument is contrary to, or an unreasonable application of, Supreme Court precedent. *Carey v. Musladin*, 549 U.S. 70, 76-77 (2006); *Henry v. Page*, 223 F.3d 477, 480 (7th Cir. 2000). Such a showing requires that there is a Supreme Court case that clearly supports the petitioner's claim. *Henry v. Page*, 223 F.3d 477, 480 (7th Cir. 2000) (citation omitted). Harris has not identified such a case. This is not surprising: the Seventh Circuit has held that "[t]here is no Supreme Court precedent for the proposition that a defendant must be advised of a term of MSR at the time he attempts to enter a plea of guilty," and the Supreme Court has "expressly declined to decide such an issue in the very similar context of parole." *Lockhart v. Chandler*, 446 F.3d 721, 724 (7th Cir. 2006) (citing *Lane v. Williams*, 455 U.S. 624, 630 n. 9 (1982)).

Harris nevertheless argues that the Supreme Court's holding in *Santobello* establishes this right, and that the state court's refusal to apply *Santobello* to his case was unreasonable. (Habeas Pet. at 29-30.) As described earlier, in *Santobello*, the petitioner pleaded guilty in exchange for the prosecutor's agreement to refrain from making a sentencing recommendation; then, at sentencing, a new prosecutor recommended the maximum sentence. 404 U.S. at 258-59. The *Santobello* Court held that "when a plea rests in any significant degree on a promise or agreement of *the prosecutor*, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id.* at 462 (emphasis added). *Santobello* stands for the proposition that the government must keep its end of a negotiated plea agreement; it does not address the narrower question presented here, of whether due process is violated when a trial court provides an

imperfect MSR admonishment.  *See Gillis v. Grams*, 351 Fed. Appx. 111, 114-15 (7th Cir. 2009) (unpublished).

*Santobello* is further distinguishable because in that case, the defendant pleaded guilty in reliance on the prosecutor's assurance that he would make no sentencing recommendation.  The prosecutor's failure to keep that promise occurred *after* the defendant had entered his plea.  404 U.S. at 258-59.  Here, the trial court informed Harris that a murder sentence carries a mandatory supervised release period *before* he pleaded guilty, so he was aware of the MSR term when he entered his plea.  Thus, even if *Santobello* extended to establish a prisoner's right to be advised of MSR, it would not support Harris's claim.

Harris argues that this court should review his claim *de novo* because the state court did not decide his *Santobello* claim on the merits.  (Habeas Pet. at 18); *see Cone v. Bell*, 556 U.S. 449, 472 (2009) (where the state court did not reach the merits of petitioner's claim, it is reviewed *de novo*).  To the contrary, the Illinois Appellate Court did address the merits.  It held that while *Whitfield* had its roots in *Santobello*, Harris's claim relied on the new rule announced in *Whitfield*, so he was not entitled to relief based on *Santobello* alone.  (Rule 23 Order, *People v. Harris*, No. 1-07-0021 (Ill. App. Ct. 1st Dist. Aug. 10, 2010) at 3-4.)

Even addressed *de novo*, Harris's claim would not warrant relief.  Harris contends that the trial court failed to advise him that he would be subject to a three-year MSR period (Habeas Pet. at 23), but the record from the plea colloquy defeats that argument.  At that hearing, the trial judge informed Harris that the first degree murder charge he was facing "carries a sentence from twenty to sixty years in the Illinois Department of Corrections" and "a three year mandatory supervised release period."  (Trial Tr. at C63.)  The judge then asked, "[d]o you understand the charges and the possible penalties?" (*Id.*)  Harris responded that he did, and then immediately entered his guilty plea.  (*Id.*)  It is not clear why the trial judge referred to a *mandatory* supervised release period as a "possible" penalty, but the fact remains that Harris was told that murder carries a mandatory term

of supervised release, and acknowledged that he understood this. Harris offers no basis for a finding that he did not understand the penalties for his crime, or that his negotiated sentence, as he understood it, did not include an MSR term. Given this evidence, the state court properly affirmed the dismissal of Harris's petition.[5]

The Seventh Circuit cases Harris relies on do not alter this conclusion. Those cases involve defendants who received no notice that MSR was added to their sentences, or were expressly told that they would not have to serve an MSR term. In *U.S. ex rel. Miller v. McGinnis*, the trial court informed the defendant that, "[a]s to each of these offenses, *without murder being included*, the Court can also impose . . . a [MSR] period on you of up to a period of three years . . . on each of these charges." 774 F.2d 819, 820 (7th Cir. 1985) (emphasis added). The court then sentenced him to twenty years for murder to run concurrently with the six, six, and four-year sentences for his other crimes, followed by supervised release. *Id.* at 823-24. The Seventh Circuit concluded that Miller's due process rights were violated because before he pleaded guilty, he was told he would receive a maximum sentence of twenty years, when in fact his sentence did include an additional three-year MSR period. *Id.* Miller was told that MSR could be added to the sentences for his crimes *other than murder*. In contrast, the state judge told Harris that a sentence for murder necessarily includes a mandatory supervised release period.

Similarly, in *U.S. ex rel. Baker v. Finkbeiner*, the defendant pleaded guilty in exchange for a two-year sentence and was not informed that he would have to serve two years of parole. 551 F.2d 180, 182 (7th Cir. 1977). In *U.S. ex rel. Ferris v. Finkbeiner*, the trial judge told the defendant that he would not have to serve the statutorily required parole period if he served most of his five to ten-year sentence. 551 F.2d 185, 186 (7th Cir. 1977). In each of these cases, the court held that

---

[5] The same evidence arguably shows that Harris's petition is not timely under 28 U.S.C. § 2244(d)(1), but because his petition fails on the merits, the court need not address this issue.

imposing parole periods on these defendants' sentences violated due process, because the defendant was either never informed of the statutory parole period, or was incorrectly advised that he would not have to serve it. Harris's case is different. He was advised of the MSR term before he entered a plea, and was fully aware of the sentence he faced. Therefore, Harris "faces an impossible hurdle," *Lockhart*, 446 F.3d at 724, because he cannot establish that the state court "unreasonably applied clearly established Federal law." *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (internal quotations omitted).

In *Morris*, the Illinois Supreme Court set out criteria "to ensure that the admonishments given during a plea hearing comply with . . . due process post-*Whitfield*." 925 N.E. at 1082. The *Morris* court recognized that there is no precise formula; the trial court's MSR admonishments need not be perfect, but defendants must be advised that a term of MSR will be added to the agreed prison term. *Id.* To ensure that defendants understand the consequences of their plea agreements, the court "strongly encourage[d]" trial court judges to include MSR when reviewing the terms of a defendant's plea agreement, when imposing sentence, and in the written order of conviction and sentence. *Id.* at 1082-83. In this case, the trial court's MSR admonishment was not perfect, but Harris has not established a violation of his constitutional rights; his habeas corpus petition is therefore denied.

## **CONCLUSION**

Petitioner Artis Harris's petition for habeas corpus is denied. Harris also requests a certificate of appealability, which the court may grant if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Although the court is satisfied that Harris was advised of the MSR before he pleaded guilty, reasonable jurists may debate whether the trial court's admonishment satisfied due process, and whether Harris was denied the benefit of his plea bargain under *Santobello*. The court therefore grants Harris's request for a certificate of appealability.

ENTER:

Dated: December 14, 2012

_____
REBECCA R. PALLMEYER
United States District Judge